IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF TEXAS

DALLAS DIVISION

| | | |
|---|---|---|
| DONALD WAYNE GOOD, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:06-CV-2133-K |
| | § | |
| THE CITY OF IRVING, TEXAS, | § | |
| ET AL., | § | |
| | § | |
| Defendants. | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the court are: (1) Defendants The City of Irving and Fred Curtis'
(collectively "Defendants") Motion for Judgment on the Pleadings and for
Reconsideration Regarding Plaintiff's Claims under *Wallace v. Kato* (doc. 80); (2)
Defendants' Motion for Summary Judgment (doc. 81); (3) Plaintiff Donald Wayne
Good's ("Plaintiff") Motion to Strike Defendants' Affidavits for Failure to Comply with
Federal Rules of Civil Procedure 56(e) (doc. 99); (4) Defendants' Motion for Leave to
Supplement Their Summary Judgment Appendix Pursuant to Federal Rules of Civil
Procedure 56(e) (doc. 105); (5) Defendants' Motion for Leave to File Surreply to
Plaintiff's Motion to Strike Defendants' Affidavits for Failure to Comply with Federal

- 1 -

Rule of Civil Procedure 56(e) (doc. 111); (6) Defendants' Motion to Strike Appendix in Support of Certain Improper Evidence Submitted in Support of Plaintiff's Response to Defendants' Motion for Summary Judgment (doc. 113); (7) Defendants' Motion for Leave to File Supplemental Briefing in Support of Their Motion for Summary Judgment Based Upon New Persuasive Authority (doc. 128); and (8) Plaintiff's Motion to Strike Defendants' Motion for Leave to File Supplemental Briefing in Support of Their Motion for Summary Judgment Based Upon New Persuasive Authority (doc. 132).

The Court **DENIES:** (1) Plaintiff's motion to strike Defendants' affidavits (doc. 99); (2) Defendants' motion for leave to file surreply (doc. 111); (3) Defendants' motion to strike appendix (doc. 113); (4) Defendants' motion for leave to file supplemental briefing (doc. 128); and (5) Plaintiff's motion to strike Defendants' motion for leave (doc. 132). The Court **GRANTS** Defendants' motion for leave to supplement their summary judgment appendix (doc. 105). The Court **GRANTS in part** Defendants' motion for judgment on the pleadings (doc. 80) and motion for summary judgment (doc. 81) because (1) Plaintiff's constitutional claims against Defendant Fred Curtis for violations of his First, Fifth, Sixth, Eighth, and Ninth Amendment rights are dismissed for failure to state a claim and (2) there is no genuine fact issue as to Plaintiff's § 1983 claims against Defendant City of Irving. The Court also **DENIES in part** Defendants' motion for judgment on the pleadings (doc. 80) and motion for summary judgment (doc.

81) as to Plaintiff's claims for violations of his rights under the Fourth and Fourteenth Amendment as well as under Article I, Section 19 of the Texas Constitution because the Court concludes a genuine fact issue exists as to these claims.

## I.    Background

In the morning of June 9, 1983, Jane Doe ("Ms. Doe") and her eight-year old daughter were at their home in Irving, Texas, when a man entered the home.   The intruder bound them both, with their hands behind their backs, in the living room.   He then took Ms. Doe into a bedroom where he sexually assaulted her.   Before he left, he took money from Ms. Doe's wallet.   Ms. Doe was able to free her daughter and herself, then call 9-1-1.   Irving Police Department ("IPD") responded to the call.   Detective John Michaels was assigned to the case, and an investigation began.   The crime scene was processed, and a rape kit was completed at Parkland Hospital where Ms. Doe had been transported.

Later that day, Ms. Doe gave a description to the Irving Police of the assailant, describing him as a white male in his twenties, 6 feet tall, weighing about 190 pounds with a medium to large build, having blondish brown hair, and being clean shaven with a dark tan.   Ms. Doe then worked on a composite sketch of her attacker.   Ms. Doe thought the final drawing bore a clear and unmistakable resemblance to her attacker. The composite sketch was then distributed throughout the IPD.

On June 15, Plaintiff had been arrested on an outstanding warrant for bond forfeiture in a DWI case.  Defendant Fred Curtis, who was not assigned to the investigation of Ms. Doe's rape, had suspected Plaintiff to be responsible for certain unsolved daytime burglaries in Irving.  Defendant Curtis brought Plaintiff to his office for the purpose of interviewing him about these unsolved burglaries.  While speaking to Plaintiff, Defendant Curtis noticed a resemblance between Plaintiff and the composite sketch of Ms. Doe's attacker, which was on Defendant Curtis' desk.  Defendant Curtis took a few Polaroid photographs of Plaintiff, then compiled a photographic array of suspects to show Ms. Doe.

Ms. Doe returned, with her husband, to the IPD to view the photographic lineup. (Ms. Doe had previously been shown two other photographic lineups, but failed to identify anyone in either as her attacker.)  She became very emotional upon seeing Plaintiff's photograph and identified him as her attacker.  The charges of aggravated rape, aggravated robbery, and burglary of a habitation against Plaintiff were added.

Plaintiff was ultimately sentenced to life imprisonment for the offenses stemming from the rape of Ms. Doe.  Plaintiff served a total of 13 years, 7 months, and 5 days upon which time he was released on parole.  He was, thereafter, required to register as a sex offender.

In 2001, while in custody on a parole violation, Plaintiff filed a motion for his DNA to be tested for the 1983 offense.  In 2004, Plaintiff's DNA was compared to the

DNA taken during the investigation, and Plaintiff was ruled out as the source of the crime scene DNA. Plaintiff's sentence was subsequently vacated, and all charges stemming from those offenses were dismissed.

## II.   Legal Standards

### A.   Motion for Partial Judgment

Defendants have filed a motion for partial judgment under rule 12(c). The standard of review for a rule 12(b)(6) motion to dismiss also applies to rule 12(c) motions. *See Great Plains Trust Co. v. Morgan Stanley Dean Witter* & *Co.*, 313 F.3d 305, 313 n. 8 (5th Cir. 2002). In considering a motion to dismiss, the court must presume all well-pleaded facts in the plaintiff's complaint to be true, and resolve any ambiguities or doubts regarding the sufficiency of their claims in their favor. *Kane Enterprises v. MacGregor (USA) Inc.,* 322 F.3d 371, 374 (5th Cir. 2003); *Campbell v. Wells Fargo Bank,* 781 F.2d 440, 442 (5th Cir. 1986). Further, the court may not dismiss the complaint "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of their claims which would entitle them to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957). However, the plaintiff must plead specific facts, not mere conclusory allegations, to avoid dismissal for failure to state a claim. *Kane Enterprises,* 322 F.3d at 374; *Collins v. Morgan Stanley Dean Witter,* 224 F.3d 496, 498 (5th Cir. 2000). Dismissal is proper when "even the most sympathetic reading of [the] pleadings uncovers no

theory and no facts that would subject the present defendants to liability." *Jacquez v. Procunier,* 801 F.2d 789, 791-92 (5th Cir. 1986).

    B.    Motion for Summary Judgment

    Summary judgment is appropriate when the pleadings, affidavits and other summary judgment evidence show that no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law.  FED.R.CIV.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The moving party bears the burden of identifying those portions of the record it believes demonstrates the absence of a genuine issue of material fact.  *Celotex,* 477 U.S. at 322-25.  Once a movant makes a properly supported motion, the burden shifts to the nonmovant to show the existence of a genuine fact issue for trial; but, the nonmovant may not rest upon allegations in the pleadings to make such a showing.  *Id.* at 321-25; *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255-57(1986).  The nonmovant may satisfy this burden by providing depositions, affidavits, and other competent evidence; not with "conclusory allegations, speculation, and unsubstantiated assertions."  *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc).  Neither merely colorable evidence nor a mere scintilla of evidence can defeat a motion for summary judgment.  *Anderson*, 477 U.S. at 249-52. All evidence and reasonable inferences must be viewed in the light most favorable to the nonmovant. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

    C.    Qualified Immunity

A governmental employee is entitled to assert the affirmative defense of qualified immunity when he is sued for a constitutional violation under section 1983. *White v. Taylor*, 959 F.2d 539, 544 (5th Cir. 1992)(Fitzwater, J.). Qualified immunity protects government officials performing discretionary functions from suit and liability for civil damages to the extent their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A law is considered to be clearly established when "the contours of a right asserted are sufficiently clear that a reasonable official would understand that what he is doing violates that right." *White*, 959 F.2d at 544. The doctrine protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341(1986).

In determining whether qualified immunity applies to a public official's actions, the court uses a two step analysis. *Hampton Co. Nat. Sur,. LLC v. Tunica Co., Miss.*, 543 F.3d 221, 224-25 (5th Cir. 2008). First, the court inquires whether, viewing the evidence in the light most favorable to Plaintiff, some evidence exists to support Plaintiff's claim of a constitutional violation. *Id.* at 225. This is a legal question. *Id.*; *White*, 959 F.2d at 544. If there is no violation of a constitutional right, the court need inquire no further. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001). If there is some evidence, however, the court then inquires "'whether the defendant's actions were objectively unreasonable in light of clearly established law at the time of the conduct in

question.'" *Hampton*, 543 F.3d at 224-25 (quoting *Freeman v. Gore*, 483 F.3d 404, 410-11 (5th Cir. 2007)).   The court looks to whether it would be clear to a reasonably competent officer that his actions violated clearly established law at the time of the incident in question.   *Hampton*, 543 F.3d at 224-25.

## III.   Application of the Law

### A.   Defendant Curtis

#### 1.   First Amendment

Plaintiff makes a claim that Defendant Curtis violated his First Amendment rights.  Plaintiff's Rule 7(a) reply states that Defendant Curtis violated Plaintiff's First Amendment right by fabricating evidence, providing false evidence, and failing to disclose exculpatory evidence.  Plaintiff does not provide any detail as to which of his First Amendment rights were violated, or even how.  In his motion to strike Defendants' motion for partial judgment, or alternatively, his response in opposition, Plaintiff states for the first time that his right to maintain intimate associations was violated by Defendant Curtis' actions.  Plaintiff complains he was unable to maintain relationships with his family during his incarceration and, because he is required to register as a sex offender, he is unable to maintain any relationship with minor family members.

As Defendants correctly point out, nowhere in the Original Complaint does Plaintiff make any specific allegations regarding the alleged violation of his First

Amendment rights.  Neither does Plaintiff make any specific allegations in his Rule 7(a)

Reply.  Only in his response to Defendants' motion for partial judgment does Plaintiff

attempt to expound upon his claim.  Plaintiff must plead specific facts, not make mere

conclusory allegations, to avoid dismissal for failure to state a claim.  *Kane Enterprises,*

322 F.3d at 374; *Collins,* 224 F.3d at 498.  "[E]ven the most sympathetic reading" of

Plaintiff's Complaint and Rule 7(a) Reply reveals no specific facts and no theory which

would subject Defendants to any liability on his First Amendment claim; therefore,

dismissal of this First Amendment claim is appropriate.  *See Jacquez,* 801 F.2d at 791-92.

Even if Plaintiff had met the threshold requirements of stating a claim, the Court

must conclude the affirmative defense of qualified immunity would shield Defendant

Curtis.  The Court cannot conclude that the constitutional right Plaintiff asserts in this

case is "clearly established."  A right to intimate association under the First Amendment

has been recognized by the Supreme Court.  *Roberts v. United States Jaycees*, 468 U.S. 609,

617-18 (1984).  However, courts to-date have not decided whether this right applies to

convicted persons later exonerated.  In conducting a qualified immunity analysis, the

court looks to whether the defendant violated a clearly established federal law at the

time he acted.  *See Hampton*, 543 F.3d at 224-25; *see also McClendon*, 258 F.3d at 438.

The Court cannot conclude that Defendant Curtis acted in such a way as to violate a

clearly established constitutional right of Plaintiff at the time of the incident.

Accordingly, the Court **dismisses** Plaintiff's First Amendment claims for failure to state a claim.

> 2.    Fifth Amendment Claim

Plaintiff alleges Defendant Curtis violated his Fifth Amendment right to due process.  The Court must determine whether Plaintiff's allegations rise to the level of a constitutional deprivation as it relates to his Fifth Amendment right.

The Fifth Amendment's due process clause and the protections it affords apply only to violations by the United States or a federal actor.  *Jones v. City of Jackson*, 203 F.3d 875, 880 (5th Cir. 2000)(*citing Morin v. Caire*, 77 F.3d 116, 120 (5th Cir. 1996)("[T]he Fifth Amendment applies only to the actions of the federal government, and not to the actions of a municipal government[.]")); *Knoetze v. U.S., Dept. of State*, 634 F.2d 207, 211 (5th Cir. 1981)("[F]ifth amendment protection attaches only when the federal government seeks to deny a liberty or property interest."); *see Hazleton v. City of Grand Prairie, Tex.,* 8 F.Supp.2d 570, 578 (N.D. Tex. 1998)(Solis, J.).  Plaintiff does not plead that either Defendant was a federal actor or that either acted under federal law.  Because the Fifth Amendment's protections do not contemplate the kind of injury alleged, the Court finds Plaintiff has failed to state a claim upon which relief may be granted.  The Court **dismisses** this claim.  *See Morin*, 77 F.3d at 120 (district court should have dismissed the plaintiff's Fifth Amendment claim because that constitutional

provision does not protect an individual from the type of harm plaintiff claimed).

                    3.      Sixth Amendment Claim

Plaintiff asserts a claim that Defendant Curtis violated his rights to a fair trial under the Sixth Amendment.  Specifically, Plaintiff contends this right was violated when Defendant Curtis fabricated false evidence and made misrepresentations based on that false evidence to prosecutors.

A fair trial claim as asserted by Plaintiff has not been recognized in this district nor in the Fifth Circuit.  Indeed, in *Castellano v. Fragozo*, 352 F.3d 939 (5th Cir. 2003)(en banc), the Fifth Circuit held that the state's action of manufacturing evidence was a violation of due process under the Fourth Amendment.  *Id.* at 956-57.  The only cases in which this type of claim has been recognized are out of the Second Circuit.  *See Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123 (2nd Cir. 1997); *Mitchell v. Home*, 377 F.Supp.2d 361 (S.D.N.Y. 2005); *see also Rolon v. Henneman*, 443 F.Supp.2d 532 (S.D.N.Y. 2006).  Based on prior Fifth Circuit caselaw, the Court is confident the Fifth Circuit would not recognize this specific cause of action as cognizable.

Even if this Court did recognize this as a cognizable action, the Court concludes this case does not fall within the parameters set forth by the Second Circuit.  In *Ricciuti*, the plaintiffs alleged the defendant-police officers fabricated a confession by plaintiff, Alfred Ricciuti, after he had been arrested, which was then provided to the prosecutors office.  This supposed confession contained racial epithets, which elevated the offense

- 11 -

for which plaintiffs were charged, as well as caused the prosecutor to add an additional charge.  The Second Circuit held that a police officer's fabrication of evidence likely to influence a jury and subsequent disclosure of that to the prosecutor violates the accused's right to a fair trial.  *Id.* at 130.  Fabricating evidence and forwarding the false evidence by an officer corrupts "'the truth-seeking function of the trial process.'" *Id.* at 129 (quoting *U.S. v. Agurs*, 427 U.S. 97, 104 (1976)).

The facts in *Ricciuti* are distinguishable, however.  In *Ricciuti*, the defendant-officers fabricated the evidence after the plaintiffs had been arrested.  In this case, the allegedly fabricated evidence, the suggestive photographic lineup, was created before Plaintiff's arrest in a supposed attempt to make him out to be the rapist.  This difference in pre-arrest versus post-arrest fabrication was noted in *Rolon*.  *Id.*, 443 F.Supp.2d at 532.  In that case, the district court explained that a pre-arrest manufacture of false evidence implicates an individual's due process rights under the Fourth Amendment, rather than a post-arrest fabrication, which would invoke an individual's right to a fair trial under the Sixth Amendment.  *Id.* at 539 (citing *Zahrey v. Coffey*, 221 F.3d 342, 349 (2nd Cir. 2000)).  This Court agrees with the *Rolon* court's distinction.  The trial process had not been affected, as Plaintiff had not yet been arrested and charged with the offenses against Ms. Doe when Defendant Curtis' allegedly acted in a way to violate Plaintiff's rights.  Because this case involves alleged pre-arrest fabrication of evidence, the Court concludes Plaintiff's due process rights under the Fourth Amendment would be

- 12 -

implicated rather than his right to a fair trial under the Sixth Amendment.

The Court concludes Plaintiff's Sixth Amendment claim is not a cognizable claim as recognized by any authority binding to this Court and hereby dismisses it. Regardless, even if the Court were to recognize such a claim, it does not fit within the dictates set forth by the Second Circuit, which has previously recognized this cause of action. The Court **dismisses** this claim.

### 4. Eighth Amendment Claim

Plaintiff also asserts a claim that Defendant Curtis violated his rights under the Eighth Amendment. Again, the Court must determine whether Plaintiff's allegations rise to the level of a constitutional deprivation.

The protection against cruel and unusual punishment under the Eighth Amendment applies only to convicted persons. *See Morin*, 77 F.3d at 120. The record establishes that Plaintiff's Eighth Amendment claims relate to actions or conduct which occurred prior to his conviction. Accordingly, Plaintiff's pleadings do not implicate the Eighth Amendment and its protections. Therefore, Plaintiff has failed to state a claim upon which relief may be granted for his Eighth Amendment claims. The Court **dismisses** this claim. *See Morin*, 77 F.3d at 120.

### 5. Ninth Amendment Claim

Plaintiff also alleges his Ninth Amendment rights were violated by Defendant

Curtis.  The Court must determine whether Plaintiff's allegations rise to the level of a constitutional deprivation.

Just as with certain other of Plaintiff's claims, no where in his Original Complaint does Plaintiff make any specific allegations regarding the alleged violation of his Ninth Amendment rights.   Plaintiff must plead specific facts, not make mere conclusory allegations, to avoid dismissal for failure to state a claim.  *Kane Enterprises,* 322 F.3d at 374; *Collins,* 224 F.3d at 498.  "[E]ven the most  sympathetic reading" of Plaintiff's Complaint reveals no specific facts and no theory which would subject Defendants to any liability, so dismissal of this Ninth Amendment claim is appropriate.  *See Jacquez,* 801 F.2d at 791-92.  Plaintiff has failed to state a claim related to his Ninth Amendment claims.

Even if Plaintiff had sufficiently plead this claim, it would fail as a matter of law. The Ninth Amendment is not recognized by courts as an independent basis for securing any constitutional right in a civil trial, more specifically in a section 1983 case.  *See Strandberg v. City of Helena*, 791 F.2d 744, 748-49 (9th Cir. 1986)(Ninth Amendment not recognized as independently securing any constitutional right, and section 1983 claims must be premised on specific constitutional violation); *Lloyd v. Lee*, 570 F.Supp.2d 556, 566 (S.D.N.Y. 2008)(Ninth Amendment cannot be basis for section 1983 claim which must be premised on specific constitutional violation); *Clynch v. Chapman*, 285 F.Supp.2d 213, 218-19 (D. Conn. 2003)(Ninth Amendment cannot be basis for section

1983 claims because it is merely a rule of construction, not a source of constitutional rights); *Grant v. John Hancock Mut. Life Ins. Co.*, 183 F.Supp.2d 344, 362 (D. Mass. 2002); *Mann by Parent v. Meachem*, 929 F.Supp. 622, 634 (N.D.N.Y. 1996)(Ninth Amendment recognized as rule of construction, not enumerating certain constitutional right, and section 1983 claims must be based on specific constitutional guarantee); *see also Froehlich v. State, Dept. of Corrections*, 196 F.3d 800, 801 (7th Cir. 1999)(Ninth Amendment rule of interpretation, not source of constitutional rights); *Schowengerdt v. United States*, 944 F.2d 483, 490 (9th Cir. 1991)(Ninth Amendment not independent basis for seeking constitutional claims). Following these courts, this Court concludes the Ninth Amendment cannot independently secure any constitutional right. Consequently, Plaintiff's Ninth Amendment claims are hereby **dismissed**.

### 6.     Fourth and Fourteenth Amendment Claims

Plaintiff argues his Fourth Amendment rights were violated when, without probable cause, he was charged with the rape and burglary of Ms. Doe. Plaintiff claims his rights to a fair trial, not to be deprived of liberty, and due process were violated when Defendant Curtis manufactured evidence to obtain a wrongful conviction, failed to disclose exculpatory evidence, conducted an investigation with no regard for his innocence, or fabricated evidence. These claims center on the photographic lineup

compiled by Defendant Curtis from which Ms. Doe identified Plaintiff as her rapist.

Defendant Curtis maintains the photographic lineup was not unduly suggestive, but even if it was, it did not give rise to a substantial risk of misidentification. Plaintiff argues Defendant Curtis was angered by Plaintiff's refusal to answer questions about unsolved (and unrelated) burglaries in Irving. In retaliation for Plaintiff refusing to cooperate, Plaintiff argues that Defendant Curtis purposefully darkened, or underexposed, the photograph of Plaintiff in order to make Plaintiff resemble the composite sketch of Ms. Doe's rapist. In support of his response to Defendants' motion for summary judgment, Plaintiff provides his affidavit in which he states that Defendant Curtis threatened to "fix it" so Plaintiff would match the composite sketch of the rapist, then deliberately darkened the photograph of Plaintiff which Defendant Curtis used in the photographic lineup.

If an identification procedure is "'unnecessarily suggestive and conducive to irreparable mistaken identification,'" it violates the individual's rights to due process. *U.S. v. Atkins*, 698 F.2d 711, 713 (5th Cir. 1983)(quoting *Stovall v. Denno*, 388 U.S. 293, 301-02 (1967)(*abrogated on other grounds by Griffith v. Kentucky*, 479 U.S. 314 (1987))). The intentional use of unduly suggestive identification procedures can support a section 1983 action. *Geter v. Fortenberry*, 882 F.2d 167, 170-71 (5th Cir. 1989). Based on the summary judgment evidence, the Court concludes genuine issues of material fact exist on Plaintiff's Fourth and Fourteenth Amendment claims, specifically whether the

photographic lineup was unduly suggestive.  Because some evidence exists to support these claims, the Court concludes there are also genuine issues of material fact as to whether Defendant Curtis is entitled to qualified immunity on these claims. Furthermore, the Court does not find persuasive Defendants' argument that collateral estoppel should apply, particularly in light of the fact that no binding authority on this issue exists.

Therefore, the Court **denies** Defendants' motion for partial judgment and motion for summary judgment as it relates to these claims, as well as to whether Defendant Curtis is entitled to qualified immunity.

B.      Defendant City of Irving

Plaintiff contends Defendant City of Irving ("City") had a custom, policy, or practice which denied him his constitutional rights, and to which the City was deliberately indifferent.  Specifically, Plaintiff alleges in his complaint that the City had a policy, practice, and custom of (1) "failing to properly train and supervise officers in the techniques of investigating serious crimes," (2) "investigating crimes in a manner designed to prove a case against a convenient suspect by procuring unreliable evidence and, if necessary, disregarding reliable evidence when that evidence did not comport with a particular theory of the case," and (3) "failing to discipline officers who violate the Constitution or law, or otherwise transgress the rights of criminal suspects during their

- 17 -

investigations." Plaintiff argues the City maintained these policies or customs displaying deliberate indifference to the constitutional rights of people, such as Plaintiff, and this directly resulted in his constitutional rights being violated.

A plaintiff may pursue a section 1983 claim against a municipality. *See Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690-91 (1978). But the burden for establishing municipal liability under § 1983 is stringent. *See Atkins v. City of Carrollton*, 1997 WL 160297, at *3 (N.D. Tex. March 27, 1997)(Fitzwater, J.). Evidence must establish "(1) an official policy (or custom), of which (2) a policy maker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy (or custom)." *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002). An "official policy" is:

1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or
2. A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority. Actions of officers or employees of a municipality do not render the municipality liable under § 1983 unless they execute official policy as above defined.

*Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984). If a plaintiff attempts to establish an official policy based on the existence of an informal but "persistent, widespread practice of city officials or employees," he must establish both the existence

- 18 -

of the practice and actual or constructive knowledge of this practice on the part of the governmental body or the officials to whom the body has delegated policymaking authority.  *See Atkins*, 1997 WL 160297, at *4.

a)      Policy on Photographic Lineups

The Court first addresses Plaintiff's allegations related to the inadequacies of the City's policies in that it failed to develop a policy on photographic lineups, although it had a detailed operating procedure for live lineups.  Plaintiff contends the City's failure to institute a policy for a photographic lineup was done with deliberate indifference and created an environment for Defendant Curtis to commit the constitutional violations at issue.  Plaintiff makes this argument for the first time in his response to Defendants' motion for summary judgment.  None of the claims in his complaint address the City's alleged failure to institute a policy related to photographic lineups or lack thereof.  A plaintiff cannot assert a new claim in a response to a summary judgment motion; therefore, this specific claim should be dismissed.  *See Curtis v. Arapaho Venture Ltd.*, 2004 WL 2248236, at *5 (N.D. Tex. Oct. 5, 2004)(Sanders, J.)(quoting *Woods Arts Golf, Inc. v. Callaway Golf Co.*, 196 F.Supp.2d 467, 469 n. 1 (S.D. Tex. 2002)).

b)      Investigation of Crimes and Discipline of Officers

Plaintiff claims the City also had a custom, policy or practice of investigating crimes, procuring unreliable evidence and disregarding reliable evidence, as well as failing to discipline officers who violated suspects' rights.

- 19 -

Because Plaintiff points to no policy statement, ordinance, regulation or decision which was officially adopted and promulgated related to these claims, he must establish a "persistent, widespread practice."  To prove an official policy based on a "persistent, widespread practice" of city employees or officials, Plaintiff must establish the existence of the practice <u>and</u> actual or constructive knowledge of the governing body or person(s) to whom official policymaking authority has been delegated by the governing body.  *See Atkins*, 1997 WL 160297, at *3.

The Court concludes Plaintiff failed to establish the second element of his burden of establishing actual or constructive knowledge.  In his Original Complaint, Plaintiff claims that the Chief of the Irving Police Department "is the final policy-maker for the police department."  A city's employee is not the policymaker unless exclusive policymaking authority has been delegated to that employee by its lawmakers.  *See City of St. Louis v. Prapotnik*, 485 U.S. 112, 124 (1988).  It is Plaintiff who bears the burden of establishing a genuine issue of material fact exists as to whether the City's governing body has delegated policymaking authority to lower-ranking city officials, in this case the Chief of the Irving Police Department.  *See Atkins*, 1997 WL 160297, at * 4.  Without any evidence to the contrary, the Court must assume the City's policymaking authority lies with the City's governing body.  *See id*.; *see also Prapotnik*, 485 U.S. at 126 (applicable law dictates where the municipality's policymaking authority lies and the federal court may not assume it lies anywhere else).

- 20 -

To meet his burden, Plaintiff's evidence must establish that the governing body of the City had actual or constructive knowledge of an official policy or custom of the City's employees of ratifying or authorizing the unlawful practices of which Plaintiff complains, namely failing to discipline officers who violate the Constitution or law and investigating crimes resulting in the conviction of innocent persons.  Plaintiff provided no summary judgment evidence of the official policymaker of the City; consequently, there can be no proof that the governing body of the City had actual knowledge of any unconstitutional practice or policy.  *See Atkins*, 1997 WL 160297, at *4-5.  Likewise, there can be no evidence that the governing body of the City had constructive knowledge of the alleged unconstitutional policies and practices.  *See id.* at *4  Plaintiff has failed to meet his burden to show a genuine fact issue that it was the official custom, policy or practice of the City to fail to discipline officers who violate the Constitution or law and to investigate crimes without regard to the reliability of evidence.

The Court dismisses these claims against the City.

c)      Failure to Train

Plaintiff also contends the City failed to properly train and supervise its officers in the proper investigation of serious crimes, and the City was deliberately indifferent to the rights of innocent persons and violations by its officers.

The Supreme Court held that inadequate police training may provide a basis for liability under § 1983 "only where the failure to train amounts to deliberate indifference

to the rights of persons with whom the police come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). The municipality's policies must be the moving force causing the constitutional violation. *Id.* at 389. For a municipality to be liable for failure to train, the failure to train must be a "'deliberate'" or "'conscious'" decision by the municipality. *Id.* Deliberate indifference is a stringent standard; it is more than negligence or even gross negligence. *See Estate of Davis v. City of North Richland Hills*, 406 F.3d 375, 381-82 (5th Cir. 2005). The plaintiff must establish "a pattern of violations and that the inadequacy of the training is 'obvious and obviously likely to result in a constitutional violation.'" *Id.* (quoting *Cousin v. Small*, 352 F.3d 627, 637 (5th Cir. 2003). The pattern should be of similar violations, not any and all bad acts . *Id.* at 383.

The Court considers this claim separately from the other federal claims against the City because some courts have found a single violation may provide the basis for municipal liability on a failure-to-train claim. *See Atkins*, 1997 WL 160297, at * 4 (citing *Bennett v. City of Slidell*, 728 F.2d 762, 768 n. 3 (5th Cir. 1984)). Although, the Fifth Circuit is reluctant to apply the single incident exception, noting that proof of a single incident is usually not sufficient to impose municipal liability. *See Gabriel v. City of Plano*, 202 F.3d 741, 745 (5th Cir. 2000).

Plaintiff failed to provide evidence sufficient to establish a genuine issue of material fact related to the adequacy of the City's training program or that the inadequate training was the cause in fact of Plaintiff's injury. The Supreme Court held

that a plaintiff must identify a specific deficiency in the municipality's training and either (1) a pattern of constitutional violations about which the final policymaker knew or (2) training is obviously required to avoid constitutional violations. *Canton*, 489 U.S. at 690. A plaintiff must also prove that this specific training deficiency was the actual cause of the plaintiff's constitutional injury. *Id.* at 690-91. However, a plaintiff's allegation or even showing that a particular officer was inadequately trained will not suffice to impose liability on the municipality. *Id.*

As previously addressed, Plaintiff failed to adduce any evidence of the final policymaker; therefore, there can be no showing of what the final policymaker knew, and no showing of a deliberate or conscious choice made by the policymaker related to these training programs. In addition, Plaintiff's allegations revolve around Defendant Curtis and the City's failure to train and supervise him. Plaintiff failed to adduce competent summary judgment evidence that the City's training in general was inadequate; therefore, he did not meet his burden. *Id.* Plaintiff's summary judgment evidence does not create a genuine fact issue.

Even if Plaintiff had sufficiently identified a deficiency in the City's training program, Plaintiff failed to adduce evidence that his injury was the direct result of the inadequate training program. Interestingly, Plaintiff argues in his pleadings that Defendant Curtis purposefully darkened, or underexposed, his Polaroid photograph in retaliation for Plaintiff refusing to cooperate with Defendant Curtis' questioning. This

undermines any argument Plaintiff could make that his injury directly resulted from the City's inadequate training as opposed to a possible "bad apple" the City may have hired.

For the Court to apply the single incident exception, Plaintiff must establish that the "'highly predictable' consequence" of the failure to train would cause in injury Plaintiff suffered, and that the failure to train was the "'moving force'" causing the constitutional violation.  *Estate of Davis*, 406 F.3d at 385-86.  The Fifth Circuit pointed out "'there is a difference between a complete failure to train and a failure to train in one limited area.'" *Id.* (quoting *Cozzo v. Tangipahoa Parish Council–President Government*, 279 F.3d 273, 288 (5th Cir. 2002)).  Plaintiff complains in this case about a failure to train in one area–photographic lineups.  Based on the evidence in the record, the Court concludes the "single incident exception" does not apply in this case.

The Court concludes Plaintiff has failed to meet the stringent burden set forth in *Canton* as to his failure to train claim.  The Court also concludes Plaintiff failed to adduce any evidence of who or what governing body is the City's final policymaker as required for the remainder of his claims against the City.  Therefore, the Court concludes summary judgment is appropriate for Plaintiff's federal claims against the City.

C.     State Law Claims

Plaintiff has also asserted claims against Defendants Curtis and the City pursuant to Art. I, Section 19 of the Texas Constitution.  The Court has supplemental jurisdiction over this claim under 28 U.S.C. § 1367(a).  Article I, Section 19 addresses due process

- 24 -

rights under the state constitution.  The Court has already determined that the summary judgment evidence reveals issues of material fact exist for the factfinder as it relates to Plaintiff's federal due process claims.  The Court concludes the same for this state claim. *See Jeffrey v. Board of Trustees of Bells ISD*, 261 F.Supp.2d 719, 727 (E.D. Tex. 2003). Therefore, the Court **denies** summary judgment as to Defendants Curtis and the City on this state constitutional claim.

## IV.    Conclusion

The Court dismisses Plaintiff's claims as to Defendant Curtis for violations of Plaintiff's First, Fifth, Sixth, Eighth and Ninth Amendment rights.  The Court grants summary judgment on Plaintiff's federal and state claims against Defendant City because Plaintiff failed to establish the City had an "official policy" which worked to deprive Plaintiff of his constitutionally protected rights.

The Court concludes fact issues remain as to whether the Defendant Curtis' actions, related to the photographic lineup, violated Plaintiff's Fourth and Fourteenth Amendment due process rights, as well as his due process rights under the Texas Constitution not to be arrested or charged without probable cause.  Specifically, questions remain whether Defendant Curtis manufactured or falsified evidence so that, without probable cause, Plaintiff was charged with and convicted of the offenses against Ms. Doe.  Accordingly, the Court denies summary judgment as to Defendant Curtis on

Plaintiff's claim for state constitutional due process violations.   The Court denies summary judgment on Plaintiff's claims for Fourth and Fourteenth Amendment due process violations as to Defendant Curtis, as well as whether Defendant Curtis is entitled to qualified immunity.

**SO ORDERED.**

Signed March 26th, 2009.

_____
ED KINKEADE
UNITED STATES DISTRICT JUDGE